UNITED STATES of America, Plaintiff,

v.

**613.86 ACRES OF LAND, MORE OR LESS, SITUATED IN TALLAHATCHIE COUNTY, STATE OF MISSISSIPPI, and Ernest M. Parsons et al., Defendants.**

Nos. DC 77–85–OS–O, DC 77–86–OS–O.

United States District Court,
N. D. Mississippi,
Delta Division.

Dec. 3, 1980.

William M. Dye, Jr., Asst. U.S. Atty., Oxford, Miss., for the U.S.

John W. Whitten, Jr., Breland & Whitten, Sumner, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

These cases came on to be heard on motion of the United States of America for Determination of Interest and Summary Judgment. The court has received the oral and documentary evidence produced by the parties, as well as plaintiff and defendants' proposed findings of facts and conclusions of law. After having duly considered the same and the jacket file herein, the court adopts and makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT.

A. *Background Facts.*

On February 26, 1923, a drainage district bearing the name Panola-Quitman Drainage District was established by the Chancery Court of Quitman County, Mississippi, as authorized by Chapter 195 of the Laws of Mississippi of 1912, as amended by Chapter 269, Laws of 1914. Lands embraced within the district were located in Panola, Quitman, and Tallahatchie Counties. The principal object of the district was the diversion of Little Tallahatchie River and Yacona River along the foot-hills through a channel which would return to Big Tallahatchie River in the Southwest corner of the district, just north of where Tillatoba Creek empties into Big Tallahatchie River in Tallahatchie County. The works contemplated a north-south main ditch with an average bottom width of 50 feet with protecting levees on both the east and west sides of the ditch. The levees on one side were to be approximately 28 miles in length and on the other about 16 miles. In part the works were to be constructed through Sections 6, 7 and 18, Township 25 North, Range 2 East, in Tallahatchie County, Mis-

sissippi. The lands involved in this suit are located within these sections.

The contemplated improvements were completed and put in operation by Panola-Quitman Drainage District in the years following its organization. The drainage district has continued in existence since that time as a legal and viable body politic. It has continuously and without interruption operated and maintained its levee system and floodway to the present time.

In an apparent effort to continually improve its levees and flood control facilities without the expenditure of its own funds, the Drainage District over the years, especially since World War II, has entered into agreements with the United States through the U.S. Army, Corps of Engineers, for emergency levee repairs, levee setbacks, and channel improvement projects on various portions of its facilities, in this instance on the West levee. The East levee is not involved in these proceedings.

Beginning in 1966, after longstanding requests by the Drainage District and its citizens for a large scale levee improvement project, the Corps of Engineers was directed by Congress to begin a project entitled the Panola-Quitman Floodway Levees, Yazoo Basin Headwater Project, Mississippi. In the history of the system, levee setbacks have been required from time to time to protect the levee system due to riverside erosion of the levee. A substantial setback was constructed over portions of land lying in the West half of Sections 6, 7, and 18, and other lands and had been in existence for over 31 years prior to the September 9, 1977 the date these proceedings were filed.

In cooperation with this project the Drainage District began a series of conveyances by quitclaim deed to the United States of America by which it conveyed, transferred and assigned all of its right, title and interest in and to its rights-of-way and easements included in the project area. The conveyances are authorized by statute in Miss.Code Ann., 1972, §§ 51–35–9 and 51–33–29. The United States claims to be the owner of the title, rights and interest formerly held by the Drainage District in

many tracts of land along the West side of the Panola-Quitman Floodway. It has been acquiring those interests that are needed from the drainage district as the overall project progresses. The statutes state and the court has held that the conveyances from the Drainage District to the United States are valid.

On September 9, 1977, a declaration of taking was filed in the United States District Court for the Northern District of Mississippi in the cause *United States v. 613.86 Acres of Land, Situated in Tallahatchie County, State of Mississippi, and Ernest L. Parsons, et al*, Civil Action No. DC 77–84–OS–O, which included the estate condemned in DC 77–84–S–O, DC 77–85–S–O, DC 77–86–S–O, DC 77–87–S–O and DC 77–88–S–O, in which the estate condemned is "the perpetual and assignable right and easement in the land described ... to construct, maintain, repair, operate, patrol, and replace a flood protection levee, including all appurtenances thereto; together with all right, title, and interest in and to the timber, buildings and other improvements situated on the land; to construct, operate, and maintain on, over and across said land, public roads and highways and public utilities, including any and all appurtenances thereto; reserving, however, to the owners, their heirs and assigns, all such rights and privileges in the land as may be used without interfering with or abridging the rights and easement hereby taken, subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines...."

DC 77–85–S is addressed to two tracts: Tracts 301E–1 refers to lands situated in E ½ SW ¼, W ½ SE ¼ of Section 6, and the E ½ NW ¼, NE ¼ SW ¼ W ½ E ½ of Section 7, Township 25 North, Range 2E.

Tract 302E–2 refers to lands in NE ¼ SW ¼, S ½ SW ¼ in Section 18, and other lands located in Sections 19, Range 2E; Sections 24 and 23, Township 25 North Range 1E.

DC 77–86–S is addressed to Tract No. 303E which refers to lands located in the SE ¼ SW ¼ of Section 7 and the E ½ of

NW ¼ of Section 18, Township 25 North Range 2E.

It is noted that under the conveyances to the United States of America, Panola-Quitman Drainage District quitclaimed and released all of its rights, title and interest in and to its rights-of-ways and easements located within, on, over and across the described lands. The United States of America does not claim to have been conveyed in fee any of the land described therein and which may be claimed to be owned by Mr. York or his successor in title, Mr. Evans, or the Rotenberry Trusts. There was a conflict in the deed to Clinton Gilliam Rotenberry Trust, Exhibit G–8, wherein Panola-Quitman Drainage District conveyed, subject to its easements, the East half of Sections 6 and 7, and the deed to W. Ellis York, who claims title to a strip of land in the East half of Sections 6 and 7, Exhibit G–9. When this action was instituted the Clinton Gilliam Rotenberry Trust had no contest as to claims of just compensation payable herein with respect to Sections 6 and 7, as evidenced by the stipulation filed herein.

A search of the records of lands pertaining to Panola-Quitman Drainage District shows chains of title arising from conveyances out of the Drainage District to private persons when, in some instances, there are no conveyances of record into the Drainage District. In addition to its easements obtained, there are deeds of record conveying to Panola-Quitman Drainage District fee title to lands in the E ½ of Sections 6 and 7, T 25 North, R 2E (G–1), N ½ of Section 18 (G–16) S ½ of Section 18 and NW ¼ of Section 19, T 25 R 2E (G–17) Section 24 and 23, T 2 S R 1E (G–18). Mr. W. Ellis York is the grantee from Panola-Quitman Drainage District of lands situated in Sections 23, 24 (North and West of West levee), T 25 North, R 1E and Sections 19 (North and West of West levee) and 18 (North and West of West levee and east and south of West levee) subject to levee and floodway rights (G–19).

A deposit of $100 was made by the United States as the estimate of the just compensation due on each tract to the landowners for the estate condemned inasmuch as the United States claims prior ownership of an estate by virtue of a conveyance to it of identical description from the Panola-Quitman Drainage District, by deeds dated 5 July 1977 and 4 October 1977, and recorded in the First Judicial District of Tallahatchie County, Mississippi, in Book 299 at page 216, and Book 299 at Page 281.

### B. *Lands in Controversy.*

Originally, Panola-Quitman Drainage District obtained for its construction right-of-way fee simple title to a strip of land 2600 feet in width through Sections 6 and 7, Township 25 North, Range 3 East. In Section 18, said Township and Range, the right-of-way gradually increased to a width above 2600 feet as the right-of-way proceeded southward and southwestward. Defendants York and Evans have stipulated that they have sustained only minimal damages on lands which they own south of the North Half of the Southwest Quarter of said Section 18. The stipulation is to the effect that although the United States will acquire easements over lands of the defendants south of that line, the benefits to the defendants will be sufficient to offset any damages they may suffer in that area. Therefore, the lands for which defendants seek compensation are located within the East Half of the Southwest Quarter of Section 6; the East Half of the West Half of Section 7; and the East Half of the Northwest Quarter and Northeast Quarter of the Southwest Quarter of Section 18. Defendant York also seeks compensation for a narrow strip of land, 40 feet in width, running the length of the west side of the original Panola-Quitman Drainage District right-of-way from the North line of Section 6, through Sections 6 and 7 to the South line of Section 7, all in Township 25 North, Range 2 East.

### C. *The Drainage District's Right-of-Way.*

Panola-Quitman Drainage District, by deed dated November 1, 1924, obtained from Ned R. Rice fee simple title to the

lands in Sections 6 and 7, which it required for its works of improvement. This deed is shown at page 3 of Defendants' Exhibit No. 2. The description of the land acquired is:

315.4 acres off the East side of Section 6, and 314.2 acres off the East side of Section 7, all in Township 25 North, Range 2 East, being a strip of land 2600 feet wide off the East side of said Sections.

Fee simple title to the lands in Section 18 required for the works of improvement was acquired by deed from Frank B. Smythe, recorded Book 109, page 401, and made Exhibit G–16. At the north line of Section 18 this strip of land was 2600 feet in width, but it gradually increased in width as the right-of-way was extended southward and southwestward.

The court now finds as a fact that Panola-Quitman Drainage District acquired by deed a fee simple title to the East 2600 feet of Sections 6 and 7 and a right-of-way 2600 feet and more in width in Section 18, and that defendants York and Evans are not entitled to any compensation whatever for lands which they may have occupied or claimed and which are located within said right-of-way. The court further finds that by reason of a series of deeds from Panola-Quitman Drainage District to the United States of America, the Government acquired all of the rights, title and interest which the drainage district had in said right-of-way.

### D. *The Tax Sales*

At the time of the completion of the works through the three sections of land here involved these were wild and uncultivated lands, suitable only for the growing of timber. This fact, combined with the depression of the 1930s, caused all of the lands in said three sections, other than that owned by Panola-Quitman Drainage District, to be sold for non-payment of taxes and, assuming that such sales were valid and legal, title to the lands in said sections outside the right-of-way was vested in the State of Mississippi. Title remained in the State until the lands were purchased by various individuals by way of Forfeited Tax Land Patents between the years 1935 and 1950. Under state law, however, drainage taxes, or betterments, owed to Panola-Quitman Drainage District continued to accrue, or remain in effect throughout the time the titles were vested in the State of Mississippi, and throughout the time such taxes remained unpaid in cases where titles remained in individuals by reason of defective tax sales.

### E. *Condemnation Because of Title Clouds.*

After acquiring the rights of Panola-Quitman Drainage District, the Corps of Engineers, between 1975 and 1977, decided on new works of improvements which were to be located west of and outside of the right-of-way owned by the Drainage District. Due to questionable tax sales reflected by entries on the minutes of the Board of Supervisors of Tallahatchie County, Mississippi, and certificates by the State Land Commissioner which implied that Panola-Quitman Drainage District owned lands outside its original right-of-way in said sections, the United States was unable to obtain a certificate of title from a reputable title insurance company certifying ownership of the additional lands required for the improvements. Thereupon, the United States elected to file a condemnation suit against defendants York and Evans, they being the persons occupying, claiming and paying taxes upon the additional land needed by the Corps of Engineers.

### F. *Conclusion from Oral and Documentary Evidence.*

The court now finds as facts the following, to-wit:

(1) That, except as set out in the next succeeding paragraph, Panola-Quitman Drainage District had no record or documentary title, or evidence of title, to any lands in the said three sections outside the original 2600 foot right-of-way through Sections 6 and 7 and wider right-of-way through the North Half of Section 18. Thus no valid coveyance of property rights

outside the original right-of-way was effected by the quitclaim deeds from the District to the United States.

(2) That the United States did acquire, apparently orally, the right to maintain a certain "setback" levee, constructed about the year 1945, along the east side of the Southwest Quarter of Section 6, said setback levee running approximately parallel to the west line of the 2600 foot right-of-way and being located some 270 feet west of the West line of said 2600 foot right-of-way. That this permission consists only of the right to maintain the setback levee and does not include the right to damage, destroy or remove the timber growing between the setback levee and the west line of the 2600 foot right-of-way. That the United States owes damages to the owner of the land between the 2600 foot right-of-way and the setback levee for such timber as has been damaged or destroyed by the government.

(3) That the April, 1925, order of the Board of Supervisors of Tallahatchie County, Mississippi, made Exhibit G–3 for the Government, was entered pursuant to a petition filed on behalf of Panola-Quitman Drainage District and that the lands then owned by the drainage district are correctly described in that order as:

> All East Half, less 4.6 acres West of West levee, Section 6, Township 25 North, Range 2 East, total acres, 315.4. All East Half less 5.8 acres West of West levee, Section 7, Township 25 North, Range 2 East, total acres 314.2. All Northeast Quarter of Section 18, Township 25 North, Range 2 East.

Therefore, that order is sufficient to and had the effect of, removing from the Tax Collector's sale for non-payment of taxes the above described lands. That the April, 1927, order of said Board of Supervisors, shown as Exhibit G–2 to the Government's case, does not recite that a petition was filed on behalf of Panola-Quitman Drainage District and the lands described in that order:

> Sections 6, 7, and North Half of Section 18, Township 25 North, Range 2 East.

as being the property of Panola-Quitman Drainage District is erroneous and, in fact, the drainage district at that time owned only the East 2600 feet of the lands in said Sections 6 and 7, and a slightly wider right-of-way through the North Half of Section 18. A reasonable conclusion from comparing the two orders is that the Board of Supervisors in the second order attempted to shorten and condense the description and thereby made error. That, therefore, the sale of the lands outside the right-of-way for non-payment of taxes was effective to vest title in the State of Mississippi subject, of course, to the betterments theretofore assessed by the drainage district. The List of Lands Sold to State for Non-Payment of Taxes on April 4, 1927, as shown in the Government's Exhibit G–3, thus resulted in a transfer of title to the State of Mississippi of all the lands in said Sections 6 and 7 and the North Half of Section 18, Township 25 North, Range 2 East, lying West of the Drainage District's original right-of-way. That said lands therefore became a proper subject for purchase by individuals from the State of Mississippi by the route of Forfeited Tax Land Patents. The recitals in the 1927 order of the Board of Supervisors upon which, subsequently, the State Land Commissioner based his Certificate that such sales had been voided, was erroneous and the recitation in said Board order was ineffective to prevent vesting of title to these lands in the State of Mississippi.

(4) That, as shown by defendant's Exhibit No. 2, defendant W. Ellis York acquired title from George P. Cossar and M. R. Barnhill to the property described as:

> Northeast Quarter of Southwest Quarter and South Half of Southwest Quarter, Section 6; and East Half of Northwest Quarter of Section 7, all in Township 25 North, Range 2 East.

These are a portion of the lands sold for non-payment of taxes and subsequently purchased by Forefeited Tax Land Patent from the State of Mississippi as shown by the chain of title in defendants' Exhibit No. 2.

(5) That, as shown by defendants' Exhibit No. 3, defendant W. Ellis York acquired title to the North Half of Southwest Quarter of Section 7, Township 25 North, Range 2 East, by Forfeited Tax Land Patent from the State of Mississippi. The lands which were the subject of this Forfeited Tax Land Patent were lands outside the Drainage District's 2600 foot right-of-way and which were sold to the State for non-payment of taxes in the 1920s.

(6) That defendant William Ellis Evans is the owner of the following described parcel, to-wit:

The South Half of Southwest Quarter of Section 7, Township 25 North, Range 2 East; subject to levee construction and maintenance easements granted to Panola-Quitman Drainage District.

That the chain of title to said parcel of land is, as shown in defendants' Exhibit No. 4, all of said lands having been acquired from the State of Mississippi by Forfeited Tax Land Patent. That these lands were also lands that had been sold to the State of Mississippi for non-payment of taxes and by mesne conveyances had become vested in W. Ellis York who conveyed them to William Ellis Evans by deed dated December 30, 1976, recorded in Book 296, page 20, of the land deed records at Charleston in the First Judicial District of Tallahatchie County, Mississippi, all as shown by defendants' Exhibit No. 4.

(7) That defendant William Ellis Evans, is also the owner of the following described lands:

The Northwest Quarter of Section 18, Township 25 North, Range 2 East; subject to levee construction and maintenance easements granted to Panola-Quitman Drainage District.

That this parcel of property was also conveyed to the State of Mississippi by the Tax Collector of Tallahatchie County for non-payment of taxes and thereafter by mesne conveyances title was vested in William Ellis Evans, as aforesaid. See defendants' Exhibit No. 5.

(8) That the recitation in the deed to William Ellis Evans from W. Ellis York, et ux, as follows: "subject, however, to levee construction and maintenance easements granted to Panola-Quitman Drainage District" related to an unrecorded easement which W. Ellis York had granted to Panola-Quitman Drainage District and which easement is located immediately west of the 2600 foot right-of-way and is a narrow strip of land shown on the map which is made Exhibit 1 to the defendants' case. The description in this easement includes property partly on Evans, partly on York, and partly on land already owned by the district. Evans' acreage is about 4.6 acres. York's acreage is approximately 3.5 acres. This district already owned about 6.0 acres within the calls of the description. Defendants Evans and York are not entitled to any damages caused by the United States within the calls of the description in this easement.

(9) That W. Ellis York is also the owner of a strip of land approximately 40 feet in width located between the west boundary of the 2600 foot right-of-way of Panola-Quitman Drainage District and the centerline of Sections 6 and 7, Township 25 North, Range 2 East. This strip of land runs the entire length of Sections 6 and 7, and defendants' Exhibit No. 6 contains a copy of the documents upon which York's title to this strip is grounded. That York therefore is entitled to compensation for the taking of this strip of land by the United States for public purposes, except that he is not entitled to damages inflicted on the lower 2000 feet of said strip of land for the reason that he has previously granted to the Drainage District an unrecorded easement for levee construction over this southern portion of the strip in said Section 7, as set out in the previous paragraph.

(10) As aforesaid, the betterments assessed against the subject lands continued to constitute liens upon these lands even though title was vested in the State of Mississippi. That, as shown by defendants' Exhibit No. 7, defendant York compromised, settled and paid to the Drainage District the betterments assessed against some 1473 acres within the District owned

by York, including the Southwest Quarter of Section 7, Township 25 North, Range 2 East. By quitclaim deed recorded in Book 109, page 402, in said clerk's office, Panola-Quitman Drainage District acknowledged settlement of these taxes. This quitclaim deed is made a part of defendants' Exhibit No. 3.

### F. *Title by Adverse Possession.*

That W. Ellis York and William Ellis Evans, and their predecessors in title, have been in open, notorious and exclusive possession of all of the parcels of land sought to be taken from them by the United States and that they have claimed these lands against all the world for a period in excess of 30 years. That these defendants and their predecessors in title have paid taxes on the lands, have cleared and cultivated portions of the land, have drained and built levees upon portions of the land, have sold timber from the lands and the said York has personally walked upon and inspected the lands for an average of two times each month for a period of in excess of 30 years. That this possession and control was made and exercised under color of title and during the said period no person or firm made or asserted any .claim whatever adverse to the title and occupation of W. Ellis York. That during this period of time of adverse possession title to the lands in question was not vested in the State of Mississippi, nor in Panola-Quitman Drainage District, so that said lands were a proper subject of adverse possession under color of title. That a good and perfect title did ripen in the said W. Ellis York and William Ellis Evans in and to all of the lands sought to be taken by the United States.

### G. *Attempted Flowage Rights Reservation.*

█ As aforesaid, the drainage taxes were held in abeyance, or accumulated, while title to lands sold to the State for non-payment of taxes was held by the State. When these lands were conveyed to individuals by the State of Mississippi several of these individuals petitioned for and obtained from the drainage district quit-claim deeds. These deeds were executed for the purpose of settling accumulated drainage taxes against the land and the drainage district actually had no title to the property. It merely had the right to collect the betterments or taxes. In these deeds, the drainage district attempted to reserve flowage rights over the lands. The court finds that the drainage district could not reserve what it did not at that time own, that is, flowage rights. The general rule of law with respect to an attempted exception or reservation of an interest in land which the Grantor does not own appears in Thompson on Real Property, Permanent Edition, Vol. 6, § 3458, quoted as follows:

> A grantor cannot make an effectual exception or reservation in himself of a right or interest in respect of real property which he does not own.

This rule was applied in *Federal Land Bank of New Orleans v. Cooper*, 190 Miss. 490, 200 So. 729 (1941), in which Cooper questioned the "reservation" or "exception" of one-half of the minerals in his deed from The Federal Land Bank. In upholding The Federal Land Bank's ownership of one-half of the minerals the court recited the seven essential requirements for a valid exception. The fifth requirement was stated as follows:

> 5. It must be such a thing as he that doth except may have, and doth properly belong to him.

Actually, the only instrument involving title to the property here in question is that Quitclaim Deed from Panola-Quitman Drainage District to W. Ellis York bearing the date of February 1, 1955, which appears as Exhibit G–10 for the Government. That deed quitclaimed, with other lands, the following, to-wit:

> All that part of Section 18, Township 25 North, Range 2 East owned by Grantor that lies North and West of Grantor's West levee, and all that part of the East Half of Northwest Quarter and all of that part of the Northeast Quarter of the Southwest Quarter of said Section 18 which lies East and South of Grantor's West levee.

By the first part of the above description the drainage district conveyed to York a strip about 100 feet wide between the actual location of its West levee and the actual location of the West right-of-way line of its original easements. In other words, the drainage district had not constructed its levee on the very west side of its land but had set the levee back about 100 feet and the first part of this description was a conveyance of that strip of land in Section 18. The latter part of the above description was a conveyance of lands actually within the levee. The drainage district had the right to reserve flowage rights over these lands in Section 18 because it was the owner of a fee simple title to these lands.

### H. *The Organizational Decree.*

The court finds that the Decree by which the Panola-Quitman Drainage District was established, and which Decree is made Exhibit "A" to the Government's Motion to Determine Interest, did not have the effect of granting to the Drainage District the right to take property of landowners within the district without due compensation. To do so would contravene both the Constitution of the United States and the Constitution of the State of Mississippi. That, therefore, Panola-Quitman Drainage District acquired no interest in the lands within the district by the Decree of Organization nor by exercise of its right of eminent domain.

### I. *Two Legs Support Defendants' Titles.*

■ Further, the court finds that the title and ownership of defendants York and Evans do not depend upon the validity or invalidity of the tax sales and the Forfeited Tax Land Patents which were subsequently acquired. If the tax sales were legally and validly made, then the titles that are derived through the Forfeited Tax Land Patents are good under Miss. Code, 1972 Ann. § 15–1–15, which provides that such titles are not subject to question after a period of three years. On the other hand, if one or more of the tax sales was invalid or illegal then title to the lands in question remained in individuals and thereby was subject to acquisition by York and Evans through adverse possession for a term of ten years under Miss. Code, 1972 Ann. § 15–1–13.

### J. *Title Confirmation Suits.*

The court further finds that Exhibit 8 to defendants' case further supports the title to these defendants in that the South Half of Southwest Quarter, Section 7, Township 25 North, Range 2 East (with other lands) by Decree of the Chancery Court of the First Judicial District of Tallahatchie County, Mississippi, dated April 27, 1943, entered in Cause No. 4649, was confirmed against the State of Mississippi following issuance of a Forfeited Tax Land Patent.

### II. *CONCLUSIONS OF LAW.*

■ The court therefore determines the interest of defendants York and Evans in the lands condemned to be as follows, to-wit:

(a) York is the owner of a strip of land running north and south entirely through Sections 6 and 7 with said strip of land being all property located between the west line of the 2600 foot right-of-way and the centerline of said two sections. York is entitled to due compensation for the taking of all of this strip of land except approximately 2000 feet thereof over which he had previously granted an easement for levee construction and maintenance.

(b) York is the owner of the tract of land described in the petition for condemnation as Tract No. 301E–1 and is entitled to due compensation for the taking of said tract except that he shall not be compensated for the ground actually occupied by the setback levee which commences at the north line of Tract No. 302E–1 and runs southward to about the line between Sections 6 and 7 and then turns southeastward and rejoins the original Panola-Quitman levee near the north line of said Section 7. But he is entitled to compensation for land taken between the two levees and for damages to timber located between the levees.

(c) That Evans is the owner of Tract No. 303E and is entitled to due compensation

for damages caused by the taking of said tract except that he shall not be paid any damages upon lands located south of the south line of the Northwest Quarter of Section 18. Further, he shall not be compensated for an easement on 4.6 acres along the east side of his property. This is the easement of which there is no record but York and Evans admitted the existence of the easement and admitted that the total description in the easement covered 14.6 acres of which Panola-Quitman owned 6.0 acres and York and Evans owned the balance.

(d) As to all other lands owned by defendants York and Evans and taken for public purposes by the United States, as shown by the plans and specifications on file in this cause, no compensation is due or shall be paid.

The parties will prepare and submit to the court for entry, within ten (10) days, an appropriate judgment to conclude this phase of the action.